UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| SUSAN M. ARMSTRONG AND MURRAY ARMSTRONG,<br><br>         Plaintiffs,<br><br>   vs.<br><br>GENERAL MOTORS LLC, EAN HOLDINGS, LLC, ENTERPRISE FLEET MANAGEMENT, INC., CRAWFORD GROUP, INC., THE, JIMMY ROGERS, JOSHUA B. GREENWOOD, JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, DOE NON-PROFIT ENTITIES 1-10, DOE GOVERNMENTAL ENTITIES 1-10,<br><br>         Defendants. | CIV. NO. 19-00480 LEK-RT |

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**
**CIVIL ACTION (CASE NO. 1:19-CV-00480 LEK-RT) TO STATE COURT**

        Before the Court is Plaintiffs Susan M. Armstrong and

Murray Armstrong's ("Plaintiffs") motion to remand the instant

case to state court ("Motion"), filed on October 4, 2019. [Dkt.

no. 21.] Defendant EAN Holdings, LLC, doing business as

Enterprise Holdings ("Enterprise"), filed its memorandum in

opposition on October 25, 2019,[1] and Defendant General Motors LLC

---

[1] Enterprise; Defendant Enterprise Fleet Management, Inc.,
doing business as Enterprise Fleet Management; and Defendant The

(. . . continued)

("GM") filed a substantive joinder in the memorandum in opposition on October 28, 2019. [Dkt. nos. 28, 29.] Plaintiffs filed their reply on November 1, 2019. [Dkt. no. 30.] This matter came on for hearing on November 15, 2019. Plaintiffs' Motion is hereby granted for the reasons set forth below.

## BACKGROUND

Plaintiffs filed their Complaint on August 28, 2019 in the State of Hawai`i First Circuit Court. [Notice of Removal ("Notice"), filed 9/4/19 (dkt. no. 1), Exh. A at 5-21.[2]] In addition to GM and the Enterprise Defendants, Plaintiffs also name Joshua B. Greenwood ("Greenwood") and Jimmy Rodgers ("Rogers") as Defendants (all collectively "Defendants").

According to the Complaint, on September 3, 2017, Susan Armstrong was driving a 2007 Chevrolet Impala ("the Subject Impala") when Greenwood's 1995 Toyota 4Runner struck the Subject Impala on the driver's side ("the Incident"). Plaintiffs allege Greenwood was speeding and ran through a red light. Susan Armstrong was wearing her seat belt. [Complaint at ¶ 16.] Plaintiffs did not know that the side-curtain

Crawford Group, Inc. will be referred to collectively as "the Enterprise Defendants."

[2] Exhibit A consists of multiple documents that are not consecutively paginated. All citations to Exhibit A refer to the page numbers assigned in the district court's electronic case filing system ("CM/ECF").

airbags, which they allege were a standard feature in the 2007 Impalas, "had been removed or 'deleted' from the [S]ubject Impala." [Id. at ¶ 17.] Plaintiffs allege that, because of the lack of side-curtain airbags in the Subject Impala, Susan Armstrong suffered more serious injuries than she otherwise would have suffered in the Incident. [Id.]

Plaintiffs allege GM agreed to sell the Subject Impala to Enterprise, without the standard side-curtain airbags, which saved Enterprise $140.00. [Id. at ¶ 19.] Plaintiffs argue this transaction was an example of "tens (if not hundreds) of thousands" of sale agreements "between GM and one or more of the other Defendants both before and after the sale of the [S]ubject Impala, involving multiple vehicle models over multiple model years." [Id. at ¶ 20.] Plaintiffs argue that, because Defendants knew how important airbags were to the safety of each vehicle, the pattern shown in these agreements was "callous and despicable, motivated solely by money and greed and demonstrated a pattern of conscious disregard and reckless indifference by the Defendants to the safety and rights of consumers, including [Susan Armstrong]." [Id.] Rogers sold the Subject Impala to Plaintiffs without warning them about the missing side-curtain airbags. [Id. at ¶ 27.]

Plaintiffs allege the following claims: negligence against Defendants ("Count I"); breach of express and implied

warranties against GM, the Enterprise Defendants, and Rogers ("Count II"); failure to warn against GM, the Enterprise Defendants, and Rogers ("Count III"); negligent misrepresentation against GM, the Enterprise Defendants, and Rogers ("Count IV"); a strict products liability claim against GM, the Enterprise Defendants, and Rogers ("Count V"); and a loss of consortium claim against Defendants ("Count VI").

Enterprise removed the Complaint based on diversity jurisdiction, pursuant to 28 U.S.C. § 1441. [Notice at pg. 2.] Plaintiffs state they are Hawai`i citizens. [Complaint at ¶¶ 1-2.] Enterprise asserts that, for purposes of diversity jurisdiction: GM is a citizen of Delaware and Michigan; and each of the Enterprise Defendants is a Missouri citizen. [Notice at ¶¶ 2-5.] Plaintiffs allege Greenwood and Rogers are Hawai`i citizens. [Complaint at ¶¶ 7-8.] Enterprise asserts Greenwood's citizenship and Rogers's citizenship do not have to be considered either for purposes of the forum defendant rule or for purposes of complete diversity because, when Enterprise filed the Notice, Plaintiffs had not served either Greenwood or Rogers. [Notice at ¶¶ 6, 8.] As to the amount in controversy, Enterprise notes the Complaint does not plead a specific amount of damages, but Enterprise argues "it is clear from the face of the Complaint" that more than $75,000 is at issue in the case, excluding interest and costs. [Notice at ¶ 9.]

Enterprise filed an Amended Notice of Removal ("Amended Notice") on September 30, 2019. [Dkt. no. 18.] The Amended Notice alleges that Greenwood is a Utah resident for purposes of diversity jurisdiction. [Id. at ¶ 6.] In addition, the Amended Notice alleges Rogers's citizenship does not destroy diversity because he was fraudulently joined, since Plaintiffs' claim against him fails to state a claim. [Id. at ¶ 7.]

In the instant Motion, Plaintiffs argue Enterprise's "'snap removal' process" was improper because there is no diversity jurisdiction in this case, due to a lack of complete diversity. [Mem. in Supp. of Motion at 4-5.] Plaintiffs urge this Court to disregard the Amended Notice because Enterprise did not obtain leave of court to amend the Notice and because Enterprise did not obtain the consent of the defendants that had been served at the time the Amended Notice was filed. If the arguments in the Amended Notice are considered, Plaintiffs contend Rogers was not fraudulently joined, and the Amended Notice does not establish that Greenwood is a citizen of Utah for purposes of diversity jurisdiction.

## STANDARD

### I.   General Removal Principles

The general statute governing removal, 28 U.S.C. § 1441, is "strictly construe[d] . . . against removal

jurisdiction." Hansen v. Grp. Health Coop., 902 F.3d 1051, 1056

(9th Cir. 2018) (citations and quotation marks omitted).

> If a district court determines at any time that
> less than a preponderance of the evidence
> supports the right of removal, it must remand the
> action to the state court. See Geographic
> Expeditions, Inc. v. Estate of Lhotka ex rel.
> Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010);
> California ex rel. Lockyer v. Dynegy, Inc., 375
> F.3d 831, 838 (9th Cir. 2004). The removing
> defendant bears the burden of overcoming the
> "strong presumption against removal
> jurisdiction." Geographic Expeditions, 599 F.3d
> at 1107 (citation omitted).

Id. at 1057. The "'strong presumption against removal

jurisdiction means that the defendant always has the burden of

establishing that removal is proper,' and that the court

resolves all ambiguity in favor of remand to state court."

Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009)

(quoting Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)

(per curiam)).

## II.  Diversity Jurisdiction and Fraudulent Joinder

Enterprise removed this case pursuant to 28 U.S.C.

§ 1332(a), which provides, in relevant part, that federal

district courts "shall have original jurisdiction of all civil

actions where the matter in controversy exceeds the sum or value

of $75,000, exclusive of interest and costs, and is between –

(1) citizens of different States."  Diversity jurisdiction

requires complete diversity of citizenship, *i.e.*, that every

plaintiff be a citizen of a different state from every

defendant.  Grancare, LLC v. Thrower ex rel. Mills, 889 F.3d

543, 548 (9th Cir. 2018) (citing Caterpillar Inc. v. Lewis, 519

U.S. 61, 68, 117 S. Ct. 467, 136 L. E. 2d 437 (1996)).  However,

when determining if complete diversity exists, the district

court disregards the citizenship of any fraudulently joined

defendants.  Id. (citing Chesapeake & Ohio Ry. Co. v. Cockrell,

232 U.S. 146, 152, 34 S. Ct. 278, 58 L. Ed. 544 (1914)).

> There are two ways to establish fraudulent
> joinder: "(1) actual fraud in the pleading of
> jurisdictional facts, or (2) inability of the
> plaintiff to establish a cause of action against
> the non-diverse party in state court."  Hunter v.
> Philip Morris USA, 582 F.3d 1039, 1044 (9th Cir.
> 2009) (quoting Smallwood v. Illinois Cent. RR.
> Co., 385 F.3d 568, 573 (5th Cir. 2004)).
> Fraudulent joinder is established the second way
> if a defendant shows that an "individual[] joined
> in the action cannot be liable on any theory."
> Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318
> (9th Cir. 1998).  But "if there is a **possibility**
> that a state court would find that the complaint
> states a cause of action against any of the
> resident defendants, the federal court must find
> that the joinder was proper and remand the case
> to the state court."  Hunter, 582 F.3d at 1046
> (quoting Tillman v. R.J. Reynolds Tobacco, 340
> F.3d 1277, 1279 (11th Cir. 2003) (per curiam))
> (emphasis added).  A defendant invoking federal
> court diversity jurisdiction on the basis of
> fraudulent joinder bears a "heavy burden" since
> there is a "general presumption against [finding]
> fraudulent joinder."  Id. (citations omitted).
>
> . . . We have . . . upheld such rulings
> where a defendant presents extraordinarily strong
> evidence or arguments that a plaintiff could not
> possibly prevail on her claims against the
> allegedly fraudulently joined defendant.  See

7

> McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339
> (9th Cir. 1987) (defendant's conduct
> was privileged under state law); United Comput. Sys.
> Inc. v. AT&T Corp., 298 F.3d 756, 761 (9th Cir.
> 2002) (plaintiff's claims against alleged sham
> defendant were all predicated on a contract to
> which the defendant was not a party); Kruso v.
> Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1426-27
> (9th Cir. 1989) (same). We have declined to
> uphold fraudulent joinder rulings where a
> defendant raises a defense that requires a
> searching inquiry into the merits of the
> plaintiff's case, even if that defense, if
> successful, would prove fatal. See Hunter, 582
> F.3d at 1046 (holding that an implied preemption
> affirmative defense was not a permissible ground
> for finding fraudulent joinder).

Id. at 548-49 (emphasis and some alterations in Grancare).

"Joinder is fraudulent if the plaintiff fails to state a cause

of action against a resident defendant, and the failure is

obvious according to the settled rules of the state." Hunter,

582 F.3d at 1043 (brackets, citations, and internal quotation

marks omitted).

**DISCUSSION**

I.  **Amended Notice**

At the outset, this Court must determine whether it

can consider Enterprise's Amended Notice. This district court

has stated:

> The removal statute requires that a defendant
> file a "notice of removal . . . containing a
> short and plain statement of the grounds for
> removal . . . ." 28 U.S.C. § 1446(a). This
> notice must be filed within 30 days after being
> served with the initial pleading. 28 U.S.C.
> § 1446(b)(1). Prior to the expiration of that

8

30-day window, a defendant "may freely amend the
notice of removal." 14C Charles Alan Wright &
Arthur R. Miller, Federal Practice and Procedure
§ 3733 (Rev. 4th ed. April 2019). But after the
30-day window has passed, a defendant may amend
the notice "only to set out more specifically the
grounds for removal that already have been stated
in the original notice." Id.; see ARCO Envtl.
Remediation, LLC v. Dept. of Health & Envtl.
Quality of Montana, 213 F.3d 1108, 1117 (9th Cir.
2000) (explaining that a notice may be amended
after the 30-day window to "correct a defective
allegations of jurisdiction") (citation and
quotation marks omitted); Barrow Dev. Co. v.
Fulton Ins. Co., 418 F.2d 316, 317 (9th Cir.
1969) (recognizing that after the 30-day window
lapses, "the removal petition cannot be
thereafter amended to add allegations of
substance but solely to clarify 'defective'
allegations of jurisdiction previously made").
That is, after the 30-day window has closed, a
defendant may not assert "a separate basis for
removal jurisdiction." O'Halloran v. Univ. of
Wash., 856 F.2d 1375, 1381 (9th Cir. 1988); see
also ARCO Envtl. Remediation, LLC, 213 F.3d at
1117 (reversing district court's order denying
remand and holding that defendant may not
effectively amend notice of removal by asserting
new grounds for removal, after the 30-day window
had closed, in opposition to motion to remand).

Haw. Med. Servs. Ass'n v. Nitta, CIV. NO. 19-00014 JMS-KJM, 2019

WL 2404513, at *6 (D. Hawai`i June 7, 2019) (alterations in

HMSA) (some citations omitted).

    In the instant case, the thirty-day period ran from

"the receipt by [Enterprise], through service **or otherwise**, of a

copy of" Plaintiffs' Complaint. See § 1446(b)(1) (emphasis

added). Based on the plain language of the statute, the Court

rejects Enterprise's argument that the thirty-day period began

to run when Plaintiffs served the Complaint on Enterprise.  See Amended Notice at ¶ 13.  Enterprise attached a copy of the Complaint to the Notice, which it filed on September 4, 2019, [Dkt. no. 1-1.]  Thus, Enterprise must have received a copy of the Complaint on or before September 4, 2019.  There is no evidence in the record showing that Enterprise received a copy of the Complaint prior to September 4, 2019.  For purposes of the instant Motion only, this Court finds that Enterprise received a copy of Plaintiffs' Complaint on September 4, 2019.  Because Enterprise could freely amend the Notice within thirty days after it received a copy of the Complaint, Enterprise's filing of the Amended Notice on September 30, 2019 was proper.  See HMSA, 2019 WL 2404513, at *6.  The Amended Notice will therefore be considered in ruling on Plaintiffs' Motion.

## II.  **Whether Rogers Was Fraudulently Joined**

Enterprise concedes Rogers is a Hawai`i citizen for purposes of diversity jurisdiction, but Enterprise argues Rogers's citizenship should be disregarded because he was fraudulently joined.  [Mem. in opp. at 2.]

### A.  **Pleading Standard**

Enterprise does not allege actual fraud in the pleading of the Complaint's jurisdictional allegations.  Instead, Enterprise contends Plaintiffs cannot establish a cause of action against Enterprise in state court.  See Grancare, 889

10

F.3d at 548. This Court has recognized that "[t]he fraudulent joinder analysis looks at whether it is **possible** that a **state court** would deny a motion to dismiss the claim against the non-diverse defendant." Carpenter v. PNC Bank, N.A., 386 F. Supp. 3d 1339, 1345 (D. Hawai`i 2019) (citing Grancare, 889 F.3d at 549).

Integral to this analysis is the fact that, although the language of Haw. R. Civ. P. 12(b)(6) is identical to Fed. R. Civ. P. 12(b)(6), the federal pleading standards set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), do not apply in Hawai`i state courts. Carpenter, 386 F. Supp. 3d at 1345 ("The Hawai`i Supreme Court . . . has 'expressly reject[ed]' the Twombly/Iqbal pleading standard and 'reaffirm[ed] that in Hawai`i state courts, the traditional "notice" pleading standard governs.'" (some alterations in Carpenter) (quoting Bank of Am., N.A. v. Reyes-Toledo, 143 Hawai`i 249, 252, 428 P.3d 761, 764 (2018))). Thus, the Haw. R. Civ. P. 8(a) pleading standard "'does not require the pleading of facts,'" nor does it require a plaintiff "'to plead legal theories with precision.'" Id. at 1346 (quoting Reyes-Toledo, 143 Hawai`i at 258, 259, 428 P.3d at 770, 771). "'If a complaint meets the requirements of [Haw. R. Civ. P.] 8(a), dismissal pursuant to [Haw. R. Civ. P.] 12(b)(6) is [only] appropriate where the allegations of the complaint itself

clearly demonstrate that plaintiff does not have a claim.'" Id.
(some alterations in Carpenter) (some citations and internal
quotation marks omitted) (quoting Reyes-Toledo, 143 Hawai`i at
262, 428 P.3d at 774). This framework must be used to determine
whether it is possible a state court would rule that Plaintiffs
sufficiently pled a claim against Rogers.

### B.    Plaintiffs' Claims Against Rogers

Rogers sold the Subject Impala to Plaintiffs.
[Complaint at ¶ 27.] Plaintiffs allege he made
warranties/representations "that the [S]ubject Impala could be
safely used for its intended purpose," and they relied on these
representations. [Id. at ¶ 34.] Enterprise argues "Plaintiffs
have no meritorious claims against Rogers based on settled
Hawaii law." [Mem. in opp. at 8.] Specifically, Enterprise
contends Counts II, III, and V fail because Rogers is not a
commercial seller of vehicles. See Acoba v. Gen. Tire, Inc., 92
Hawai`i 1, 18, 986 P.2d 288, 305 (1999) (holding that the
plaintiff's strict liability claim failed against a defendant
that "was not a seller or lessor engaged in the business of
selling or leasing the" product at issue because the defendant
"did not introduce the harmful product into the stream of
commerce"); Neilsen v. Am. Honda Motor Co., 92 Hawai`i 180, 190,
989 P.2d 264, 274 (Ct. App. 1999) ("In a breach of implied
warranty of merchantability claim, Plaintiff must show (1) the

seller is a merchant of such goods, and (2) the product was
defective or unfit for the ordinary purpose for which it is
used." (some citations omitted) (citing Hawai`i Revised Statute
§ 490:2-314 (1993))).

Enterprise emphasizes that the Complaint does not
allege Rogers: selected the options on the Subject Impala; was a
commercial seller of vehicles; or knew that the Subject Impala
did not have side-curtain airbags.  However, Haw. R. Civ.
P. 8(a)(1) does not require a plaintiff to plead facts.  Reyes-
Toledo, 143 Hawai`i at 258, 428 P.3d at 770.  Enterprise also
asks this Court to consider Rogers's post-removal statements
that, *inter alia*: he is not a commercial seller of vehicles; he
did not know whether or not the Subject Impala had side-curtain
airbags when he sold it to Susan Armstrong; and he made no
statements, representations, or promises to her about the
Subject Impala's safety features.  [Mem. in opp., Exh. 2 (Decl.
of Jimmy Rogers, dated 10/21/19 ("Rogers Decl.")) at ¶¶ 9-11.]
Because a claim can only be dismissed under Haw. R. Civ. P. 8(a)
and 12(b)(6) if "the allegations of the complaint itself clearly
demonstrate that" the claim fails, a state court would not
consider the Rogers Declaration in deciding whether the
Complaint would survive a motion to dismiss.  See Reyes-Toledo,
143 Hawai`i at 262, 428 P.3d at 774.

13

Further, considering the Rogers Declaration as part of Enterprise's fraudulent joinder argument would improperly "require[] a searching inquiry into the merits of [Plaintiffs'] case" against Rogers. See <u>Grancare</u>, 889 F.3d at 549. In response to the Rogers Declaration, Plaintiffs submitted Susan Armstrong's declaration stating that, *inter alia*: Rogers's girlfriend told her Rogers was in the business of buying cars at auction for re-sale; and, when she bought the Subject Impala from Rogers, she believed he was a commercial seller of vehicles. [Reply, Decl. of Jon S. Jacobs ("Jacobs Reply Decl."), Exh. I (Decl. of Susan M. Armstrong, dated 10/31/19) at ¶¶ 3, 5.] Determining whether Rogers was a commercial seller of vehicles when he sold the Subject Impala to Susan Armstrong requires the resolution of factual issues and credibility disputes that are not appropriate in a motion for remand. Enterprise therefore cannot rely on the Rogers Declaration to support its fraudulent joinder argument.

Under the Hawai`i notice pleading standard, it is possible that a state court could conclude that Plaintiffs pled actionable strict liability claims and/or an actionable breach of implied warranty claim against Rogers.[3] Enterprise has

---

[3] In light of this ruling, it is not necessary to address whether it is possible that a state court would conclude that Plaintiffs' other counts against Rogers state actionable claims.

therefore failed to carry the "heavy burden" of establishing that Rogers was fraudulently joined.  See Grancare, 889 F.3d at 548.

## III. Greenwood's Citizenship

Because Rogers was not fraudulently joined, his Hawai`i citizenship destroys diversity, rendering removal improper and requiring remand.  However, for the sake of completeness, Greenwood's citizenship will also be addressed.

Section 1332 "speaks of citizenship, not of residency."  Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).

> To be a citizen of a state, a natural person must first be a citizen of the United States.  Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828, 109 S. Ct. 2218, 104 L. Ed. 2d 893 (1989).  The natural person's state citizenship is then determined by her state of domicile, not her state of residence.  A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.  See Lew v. Moss, 797 F.2d 747, 749 (9th Cir. 1986).  A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state.  See, e.g., Weible v. United States, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth.  Residence is not an immutable condition of domicile.").

Id.  This Court has stated:

> Domicile may be changed by being physically present in the new jurisdiction with the intent to remain there.  See Mississippi Band [of Choctaw Indians v. Holyfield], 490 U.S. [30,] 48, 109 S. Ct. 1597 [(1989)]; Kanter, 265 F.3d at 857.  Thus, domicile includes a subjective as well as an objective component, although the subjective component may be established by objective factors.

> Gaudin v. Remis, 379 F.3d 631, 636-37 (9th Cir. 2004).

> The court considers a number of factors (with no single factor controlling) in determining a person's domicile: "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes."  See Lew v. Moss, 797 F.2d 747, 750 (9th Cir. 1986).

> Martin v. Ampco Sys. Parking, Civil No. 12-00598 SOM/RLP, 2013 WL 5781311, at *6 (D. Hawai`i Oct. 24, 2013), *reconsideration granted in part on other grounds*, 2013 WL 6624124 (Dec. 16, 2013).

Haw. FIT Four LLC v. Ford, CIVIL 16-00607 LEK-RLP, 2017 WL 4883421, at *4-5 (D. Hawai`i Oct. 30, 2017) (alterations in Haw. FIT).

The record does not specifically address whether Greenwood is a citizen of the United States.  However, Plaintiffs assert he is a citizen of Hawai`i for purposes of

diversity jurisdiction, and Enterprise asserts he is a citizen

of Utah.  [Mem. in supp. of Motion at 11-12; mem. in opp. at 11-

14.]  Since being a citizen of either state for purposes of

diversity jurisdiction requires that Greenwood be a United

States citizen, see Kanter, 265 F.3d at 857, the parties

apparently do not dispute that Greenwood is a United States

citizen.  The parties' only dispute Greenwood's state of

domicile.

At the time of the Incident, Greenwood was living and

working in Hawai`i.  See mem. in opp., Decl. of Kenneth K.

Fukunaga ("Fukunaga Decl."), Exh. 1 (State of Hawaii Motor

Vehicle Accident Report, dated 9/3/17, with attachments

("Incident Report")) at 1 (stating Greenwood's address was in

Mānoa, Hawai`i and his employer was Two Good Kayaks), 4 (stating

Greenwood was driving home from work when the Incident

occurred).[4]  Greenwood filed a Chapter 7 bankruptcy petition in

District of Hawai`i on October 30, 2018.  [Fukunaga Decl.,

Exh. 3 (bankruptcy petition).[5]]  At the time of the petition,

Greenwood was living in Haleiwa, Hawai`i and working as a kayak

---

[4] The Incident Report consists of multiple parts that are
not consecutively paginated.  All citations to the Incident
Report refer to the page numbers assigned in CM/ECF.

[5] The bankruptcy petition consists of multiple parts that
are not consecutively paginated.  All citations to the petition
refer to the page numbers assigned in CM/ECF.

tour operator for Shaka Kayaks, as well as a food preparer for a
food truck.  [Id. at 2, 31-32.]  In response to a question on
the petition asking whether he lived anywhere other than his
current residence during the last three years, Greenwood stated
he lived at a Utah address from February 3, 2015 to June 4, 2017
and at another Utah address from May 2013 to February 2, 2015.
[Id. at 42.]  Greenwood was also served with the Complaint at a
Haleiwa address on October 13, 2019.  [Jacobs Reply Decl.,
Exh. F (Return and Acknowledgment of Service, dated 10/13/19).]
Thus, it appears that Hawai`i has been Greenwood's residence
since June 2017.

        Enterprise argues Greenwood's employment does not
establish a subjective intent to make Hawai`i his permanent
abode because "he has worked only temporary jobs" here.  [Mem.
in opp. at 13.]  However, Enterprise has not presented any
evidence of Greenwood's employment in Utah, or anywhere else.
Greenwood also organized a Hawai`i company called "Fruit Ninja
LLC," which was in good standing as of October 27, 2019.
[Jacobs Reply Decl., Exh. E (Articles of Organization for
Limited Liability Company, filed on 5/6/19 with the State of
Hawai`i Department of Commerce and Consumer Affairs ("DCCA"),
Business Registration Division), Exh. G (Certificate of Good
Standing, issued by the DCCA).]  Fruit Ninja LLC has a Hawai`i
general excise tax license.  [Jacobs Reply Decl., Exh. H (search

18

results from Hawaii Tax Online).]  Greenwood's employment and business activity are evidence of his intent to remain in Hawai`i permanently.

Enterprise also emphasizes that, at the time of the Incident, Greenwood had a valid Utah driver's license and Utah cellular phone number.  [Fukunaga Decl., Exh. 1 (Incident Report) at 1, 6.]  Further, the last place Greenwood registered to vote was in Utah.  [Fukunaga Decl., Exh. 5 (Comprehensive Report) at 2.]  This is evidence suggesting that Greenwood does not intend to remain in Hawai`i permanently.

Enterprise notes Greenwood owns no real property or motor vehicles in Hawai`i, but he owns three motor vehicles that are located in Utah with his mother.  [Fukunaga Decl., Exh. 3 (bankruptcy petition) at 14-15.]  However, Greenwood does not own real property in Utah or anywhere else, and the three motor vehicles he owns in Utah are each worth between $1,000 and $2,250.  [Id.]  In the bankruptcy petition, Greenwood reported owning electronics worth a total of $500 and surf boards and guitars worth a total of $1,000, all of which appear to be in Hawai`i.  [Id. at 15.]  Further, Greenwood owned the vehicle that he was driving when the Incident occurred, and the vehicle had Hawai`i license plates.  [Fukunaga Decl., Exh. 1 (Incident Report) at 2.]  Greenwood may have lost that vehicle because of the Incident.  See Fukunaga Decl., Exh. 3 (bankruptcy petition)

at 17 (stating he had a $4,000 security deposit or prepayment with the "DMV for auto accident").

Enterprise also argues that, when Greenwood filed his bankruptcy petition, he had "[h]is primary bank account" at a Utah credit union, and the credit union was his only secured creditor. [Mem. in opp. at 13; Fukunaga Decl., Exh. 3 (bankruptcy petition) at 16, 24.] However, Greenwood's credit union account was a checking account with a $100.00 balance, and he also had a checking account with a $10.00 balance at a bank in Hawai`i, as well as $200.00 in cash. [Id. at 16.] While the credit union was Greenwood's only secured creditor, that debt was incurred on May 31, 2014, [id. at 24,] before he relocated to Hawai`i. Greenwood also had three unsecured creditors: the Utah credit union for a credit card; "Geico Insurance" in Hawai`i for a claim arising from the Incident; and a bank in Nebraska for a credit card. [Id. at 26-27.] Thus, the bankruptcy petition does not show that Greenwood had substantially more assets and debts in Utah than he had in Hawai`i. Greenwood's assets and debts are inconclusive evidence of where Greenwood intended his permanent abode to be.

Enterprise argues this district court "found a Hawaii resident to be domiciled in Colorado under similar objective facts." [Mem. in opp. at 14 (citing Tachibana v. Colo. Mountain Dev., Inc., No. 07-00364 SPK-BMK, 2007 WL 2916134, at *2 (D.

20

Hawai`i Oct. 2, 2007)).[6]  Tachibana is not binding upon this
Court, nor is it persuasive because, in that case, there were
additional indicia that the defendant did not intend to remain
in Hawai`i permanently.  See Tachibana, 2007 WL 2916134, at *2
("While [the defendant] did receive some mail at his Hawaii
address, he also continued to receive mail in Colorado, and did
not formally register a change of address with the United States
Postal Service. Finally, [the defendant] did not purchase
furnishings or appliances for his house on Kauai, but merely
rented them.").  In the instant case, there is less than a
preponderance of the evidence supporting Enterprise's position
that Greenwood is a Utah citizen for purposes of diversity
jurisdiction.  See Geographic Expeditions, 599 F.3d at 1107.
Even if Rogers's Hawai`i citizenship could be disregarded,
complete diversity of citizenship would still be lacking because
Greenwood is also a Hawai`i citizen for purposes of diversity
jurisdiction.

        In sum, both Rogers and Greenwood are non-diverse from
Plaintiffs.  Because diversity jurisdiction requires complete
diversity, Grancare, 889 F.3d at 548, there is no diversity
jurisdiction in the instant case.  Enterprise's removal of this

---

        [6] 2007 WL 2916134 is the magistrate judge's findings and
recommendation, which were subsequently adopted by the district
judge.  2007 WL 4162857 (Nov. 21, 2007).

case was improper, and remand to the First Circuit Court is required.  In light of this ruling, it is not necessary to address Plaintiffs' other arguments, including, *inter alia*, their argument regarding "snap removal" and their argument regarding the forum defendant rule.

**CONCLUSION**

On the basis of the foregoing, Plaintiff's Motion to Remand Civil Action (Case No. 1:19-cv-00480 LEK-RT) to State Court, filed October 4, 2019, is HEREBY GRANTED.  The Clerk's Office is DIRECTED to effectuate the remand on **February 11, 2020,** unless a timely motion for reconsideration of the instant Order is filed.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, January 27, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

SUSAN M. ARMSTRONG, ET AL. VS. GENERAL MOTORS LLC, ET AL; CV 19-00480 LEK-RT; ORDER GRANTING PLAINTIFF'S MOTION TO REMAND CIVIL ACTION (CASE NO. 1:19-CV-00480 LEK-RT) TO STATE COURT